25-3024 Horokofsky v. City of Lawrence. Council for appellant, if you will make your appearance and then proceed. Good morning, your honors. Cheryl Pilot for plaintiff Bobby Horokofsky. Please go ahead. Thank you. This case stems from an investigation that began with a statement by a woman to police that she had been raped. It was a very, very brief conversation. She subsequently went to the hospital and had a SANE exam. The police in the meantime pressured her for her cell phone, promised her they would only look at text messages and she reluctantly agreed to have her text messages looked at. During the time she was getting the SANE exam, the messages were examined. By the time she was at the end of the SANE exam, she decided she did not want to proceed with the police investigation that was conveyed to police. She went home. From that date forward, she never indicated in a clear, unequivocal fashion that wanted to proceed with an investigation. What she did was instead proceed with the Title IX investigation. We'll get back to that when we discuss conspiracy briefly. Ms. Pilot, could I focus for a second? You alluded to your client not indicating that she wanted an investigation at that point, a criminal investigation, if I heard you correctly. I noted in your reply brief at least a reference to the idea that she didn't want to do that at the time because she didn't want to re-traumatize herself. In other words, that was the reason why she didn't want to go forward with the criminal investigation at that time. I guess two questions stem from that. One, I don't recall that theory being expressed in your opening brief. Did you make that statement in your opening brief about re-traumatization? And more to the point, is that in your complaint? Your Honor, the reason she had the exam and then subsequently agreed to talk to the police, and that was at the end of their investigation, she had been the target of a ruse. She didn't know what they were doing. But her goal at all times was simply to preserve the evidence at the point that she went in and had an interview with police. And that's when they already had their so-called false statement case worked up. I apologize. I may not have been clear. What I was getting at right now is the question of whether this line of argument or theory or fact, as you would have it, that she did not want to continue with the investigation because she did not want to be traumatized. My point is, was that in your complaint? You know, to be perfectly candid, Your Honor, I don't recall if those words were used, but it certainly has been part of the case. She was very traumatized and suffered in that regard, but she felt a responsibility to preserve the evidence. And that's what she did in going to the hospital and in agreeing to talk to the police. She also made a Title IX complaint. The reason I ask that question is because one of the claims here, as I understand it, is that there was gender discrimination by virtue of the fact that they did not continue the investigation as related to the alleged rape. Well, if she repeatedly, and I think that word is in the complaint, if she repeatedly indicated she didn't want an investigation, then how can one infer from the facts that they didn't do an investigation of that rape that there was gender discrimination? Help me with that. Your Honor, what should have happened if she did not want to proceed with an investigation, then things are done. I mean, how do you investigate a so-called false statement that someone lied about a rape without investigating whether a rape occurred? I mean, and Charles Cottingham admitted repeatedly that he did not investigate the rape. I thought your theory of gender discrimination was, and maybe I need to be clear on it, that they did not pursue an investigation of the rape in a manner that, basically, they shifted and pivoted to focusing on the false statement without, in good faith, pursuing the rape investigation. If that, in fact, is your theory, and if it's not, tell me what your theory is, please, but if that is your theory, then why isn't that undercut by the fact that your client kept telling them, don't pursue the rape investigation? That's the point I'm trying to get at. Well, your Honor, she had a choice about pursuing a rape investigation. That choice is available to rape victims, and it is traumatic, obviously, to go through one, and at every turn, the things that were going on that she couldn't necessarily see show that, but you cannot investigate a false statement saying she lied about being raped without investigating whether there was a rape. What they could have done is gone to her and said, Ms. Horakofsky, we're concerned about your statements here. We'd like to see your medical records. Will you sign a release? The medical records would have conclusively answered that question. They would have answered the question that she had sex, right? I mean, how would they have conclusively answered the question that she is raped or not? She had bruises on all her extremities. She had a bruise on her neck, and she had a vaginal tear and a vaginal bruise. Corey Green, the head SANE nurse at Lawrence Memorial, has attested that her injuries are consistent with her account. And negated the fact that they would be consistent with consensual sex, too? Your Honor, that's a jury question. Let me shift to what is not a jury question, and what is not a jury question is, what is your theory of similar situation here? How is Ms. Horakofsky similarly situated to Mr. Thompson? That's a wonderful question. I'm glad. It is a wonderful question. In essence, one is the victim of a rape, which she ultimately decided she did not want to continue to have investigated. The other is a victim or claimed victim of a false confession. Mr. Thompson is saying really grotesque things in his text messages. He is live texting at the bar about how drunk she is. She can't drive. He is going to F her. He's going to do it to show Kristen he can. He refers to her as Kristen's side piece. It's because they're similarly situated in the fact that they're crime victims. Is that what you're saying? You can view them as complainants or crime victims, yes. He would be the victim of a false statement. Without doing investigation into the falsity or into the rape, he is protected. They're worried about impact on his career. He's reassured, if we can prove she lied, we're going to arrest her. Let me hit the pause button there. He is a victim under this theory of the false statement. She's a victim of the rape. Did he tell them to repeatedly not to investigate the false statement as your client did as it relates to the rape? I'm sure he very much wanted the false statement to be investigated. Okay. Well, that means that they are not similarly situated. Well, what I would say about that is Cotton Jim told Bobby that he was not going to investigate I don't know how you decide someone lied about a rape without getting their medical records, without speaking with their doctor. There was also a lot of evidence that he had a hit list, that he had done this with other women. None of that was investigated. Her friend Courtney was never re-interviewed after a short initial contact at the hospital. I'm sorry to interrupt, but let me ask you. Just so I'm clear, under the 1983 claim, the question is, there was a constitutional right that was violated. It was clearly established. What is specifically the constitutional right that you're claiming here? What is the clearly established law that would support that? Well, as you cite a District of Oregon case, and surely that is not clearly established law for this situation. Your Honor, there's a great deal of law in the- I'm asking for specifics, not great deal. Other than the District of Oregon, what's your best case? I'm going to provide a couple of names. There are cases that say that the more general the right is, or the offense is clear cut. You don't need something with factual precision on all fours. The worse the violation is, the more readily you can apply the broad constitutional precept. You're relying on the egregious violation doctrine, that if it's so egregious, that therefore you don't need on-the-point authority. Is that the idea? Yes, Your Honor. I believe Pierce v. Gilchrist mentions that. There's also a more recent 10th case, Sturtevant. What is the right that we're talking about here, to be clear? What is the right that is deemed to be clearly established? To be treated in a fair, equal, and comparable manner in a police investigation. Nothing that Thompson said was questioned. Everything she said was seen through a lens of bias. She's a liar. She's a manipulator. She is dramatic. She's not someone who can be trusted. Over and over again, those kinds of things. She's manipulative. That's a real stereotype about women. Your Honor, if I may, I just have two minutes left, but if Your Honor would like to continue questioning, I'm happy to answer questions. If my colleagues have any questions right now, I will defer. I have a few questions, Chief Judge Holmes. Chief Judge Holmes covered the ground on the equal protection claims that I was sort of interested in, but I wanted to talk to you a little bit about your malicious prosecution claim. The district judge seemed to acknowledge that if the facts that were not included in the affidavit had been included in some of the misrepresentations had been accurately stated that the affidavit might not meet the probable cause standard, but nonetheless tossed the case on the causation issue, basically saying, well, the district judge and the district attorney found probable cause to go forward with the claims. I didn't see anything in your brief on the causation point, and I looked through the complaint trying to see if there were any factual allegations that would sort of address that issue. Can you talk a little bit about that? Well, a couple of things, Your Honor. Number one, the evidence that was presented at the probable cause hearing was the same, and remarkably, they relied on these text messages where the words were, quote, spelled correctly. But more importantly, that principle seems to derive from a law where you're talking about omissions. There are misrepresentations, which there were throughout the affidavit. In identifying them, paragraphs 107 and 108 talk about falsehoods and Cotton Jim's repeated use of unsupported beliefs. He uses the word belief 10 times or more in the probable cause affidavit, which reflects his gender-biased view of this young woman. So I understand that, but I guess that doesn't address the causation issue that I think the district judge was relying on in granting the 12B6 motion. And so I guess I'm just trying to figure out how we address that. And you mentioned the Pierce v. Gilchrist case. That case, both the district court and the Tenth Circuit found that the decision to go forward with the prosecution relied on expert evidence and expert testimony that was baked into the analysis to go forward. Here, what you have is you don't have that same reliance on a specific piece of evidence which the judge or the district attorney couldn't consider. So I guess I'm just trying to figure out. Well, your honor, if I may, there's reliance, I believe by Apolli on Taylor v. Meacham. And Taylor v. Meacham stands for among many things that it puts forth that if you don't have a misrepresentation, you know, it's an affirmative misrepresentation in essence that you need to, in that case, get past summary judgment. Meacham was a summary judgment case. This kind of issue, chain of causation, is more appropriately raised at the summary judgment stage when we can flush out the entire factual picture. Let me follow up for a moment on Judge Garcia's line of questions. I mean, it's my understanding first, I noted in your reply brief, you referred to this causation issue, or at least what the DA did and what the judge did is irrelevant. I'm interested to see how that is. I mean, the district court, the DA, did he not, I think it's maybe a he, didn't the DA have a full, the whole file when he made his determination and in fact charged, brought forth two additional charges to the charges that were there? And so if that's true, and I think it is, then how can one say that there was sort of unwitting reliance on the affidavit in making a probable cause determination? Your Honor, the affidavit and the evidence sent over by the police department was limited. It was not the whole case and it reflected the very biased view of the police department. Had they done a complete investigation and honestly sat down with Ms. We feel like we can't figure out what happened here without some other information. Can we talk to your doctor? Because you said you were under continuing care. We'd like to talk to your doctor. Can we have your medical records? And I'm sorry, let's try the probable cause hearing. There was live testimony at the probable cause hearing that went beyond what was in the affidavit, was it not? Well, if there was, then why couldn't the probable cause hearing break causation? Even if the DA's charges didn't. Your Honor, not everything came in at the preliminary hearing. You know, there were some evidentiary rulings against us. Moreover, it's not up to defendant at that stage to present their whole defense, nor could we have, we were still awaiting additional discovery. So it was very much a minimal standard as it always is. Probable cause is a minimal standard. And in this case, there was a lot of missing evidence. Probable cause is a minimal standard perhaps, but probable cause will defeat causation on your malicious prosecution claim, right? Well, Your Honor, the motion to dismiss standard is very low. I mean, in terms of what is needed to survive a motion to dismiss is what we have. And we allege throughout our complaint, all the things they didn't do over and over again. Okay. And I'm sorry, let me stop you for one quick second. I had promised you a rebuttal time. I will give it to you, but Judge Garcia, do you have any more questions before we shift over? I guess it's really just where are the allegations and the complaints that you could point to that address both my questions and Chief Judge Holmes's questions with respect to causation? I understand that you, the contentions with respect to the affidavit and the information that the officers provided, but with respect to causation, what are the allegations in the complaint you can point to that would defeat the district court's finding that causation is dispositive of your claims here? Your Honor, there can be no legitimate chain of causation that defeats this claim because the entire case was burdened by the things that weren't investigated, but more importantly, Cotton Jim's beliefs, which were presented as evidence. He had this whole series of motivations based on his perception of why Bobby Horakofsky had done certain things and what she was motivated by. In fact, it was completely incorrect, but because he was not interviewing her, I guess, you know, he decided that she was seeking revenge. First, she was... Ms. Pilot, I've got... We're considerably over, and I'm sorry to cut you off, and I will give you some rebuttal time consistent with the beginning statement, but we need to hear from the other side now. Okay. Thank you. Thank you. Please. Counsel Fabbelli, please proceed. May it please the court. Michelle Stewart on behalf of the defendants, Charles Cotton Jim, Kimberly Nicholson, and the City of Lawrence, Kansas. Your honors, we're here today on multiple issues, all of which the district court correctly decided. The district court correctly denied, or excuse me, granted the motion to dismiss at the 12B6 stage on the military prosecution and conspiracy claim because the facts of the first amended complaint, specifically paragraph 127, affirmatively alleged that a probable cause decision was made by the district court upholding the charge, criminal charges brought against the plaintiff in this case. The district court also didn't abuse its discretion in denying plaintiff leave to amend or to file a third amended complaint because plaintiff failed to satisfy the good cause requirements under rule 16. And then finally, the district court correctly granted summary judgment on the 1983 equal protection claim based on qualified immunity, as well as the state law or Kansas state law claims against the city for malicious prosecution, abusive process, intentional infliction of emotional distress, and vicarious liability. The district court specifically reviewed the facts in the light most favorable to the plaintiff and found no material facts, genuine issue of material facts existed, and judgment as a matter of law was warranted. Focusing on the motion to dismiss, I, that motion seemed to have been resolved by the district court under sort of traditional Iqbal-Tromley standards of whether there was adequate pleading. I didn't see there really to be a role for qualified immunity in resolution of that motion. Am I correct on that? Your honor, the court found that there was, the pleadings did not sufficiently state a fact, question to, not a question, but specifically stated facts that would allow proceeding forward on a claim, the claims for malicious prosecution and abusive process. And in the order, I believe he did reference qualified immunity in his order. Okay. So, I mean, all right. Well, I guess my question was, go ahead, Judge Hart. I just wanted to clarify one thing. The qualified immunity ruling was based on the first prong of qualified immunity, that there was no violation. There was no discussion of clearly established law. Is that correct? That is correct, your honor. Sorry to interrupt you. No, no, that's helpful. Thank you, Judge Hart. Yes. The complaint affirmatively pled that the district attorney charged the plaintiff with making false statements to law enforcement and that the district court- mentioned paragraph 127. Yes. The allegation is that the district court found probable cause to support the charges, but everyone leaves out the clause that follows, which is relying largely on the correct spelling and Bobby's early morning text messages. And that's different than what the district court found. In its order, the district court said largely on the basis of text messages. Isn't that a distinction with the difference? I mean, what the district court is saying is that it's reading of Ms. Horakowski's text messages supported the finding, the state district court's finding of probable cause, but that's not the allegations in the complaint. The allegations in the complaint are about spelling. Yeah. It relying largely on the morning texts while also failing to note certain errors. But what the district court also had in front of it and properly considered on the motion to dismiss was the actual affidavit from Charles Cottingham. And the court reviewed that and- And found that it likely did not support probable cause. I mean, isn't that what the district court says? Yes. But what he also said was he said he wasn't going to make a decision on whether a probable cause existed based on the omitted evidence and considering that omitted evidence. But what the court did say is based on Taylor versus Meacham and the affirmative facts pled in the first amended complaint, the chain of causation was broken by the district attorney's charges, as well as the district court's finding of probable cause at the hearing. A two day preliminary hearing in which the court was able to hear evidence. So it wasn't the preliminary, the probable cause hearing was not based on the affidavit. It was based on the evidence submitted to the court during the same. Isn't all of what you're telling me factual questions that are better resolved at the summary judgment stage? Well, with the chain of causation, there was no ability for the district court to or the plaintiff to state a claim under rule 12 B6. And- Well, we know that just because there's a finding by the state district court of probable cause, that's not dispositive if that decision was based on evidence that was falsified or otherwise somehow tainted. I mean, that's what Pierce versus Gilchrist says, isn't it? It is your honor. But in this case, the pleadings don't allege any falsifications, simply omissions. And what the district court found in deciding the motion to dismiss was that there was based on the facts pled as well as review of the affidavit itself, that the allegations were that plaintiff could not or that the district court independently considered the testimony and the evidence and found probable cause to exist. And that existence of probable cause negates any errors or omissions in the affidavit. There were no allegations in the complaint that there was any false testimony given at that preliminary hearing or that there was pressure made by either of the individual defendants on the district attorney to bring charges or to pursue charges. And so the affidavit included facts about, actually included some of the admitted evidence that plaintiff discusses and- If the standard is though that we take all of the allegations as true and draw all inferences in the plaintiff's favor, hasn't Ms. Warakoski stated a plausible claim for relief under malicious prosecution? I mean, she's saying she was raped and the officers not only didn't take her claim seriously, but then subsequently prosecuted her for reporting falsely to officers who were high-fiving, by the way, about how they'd sort of gotten her on the reporting. It just seems to me she's stated a plausible claim for relief and you're asking her at this early stage of litigation to somehow plead out all possible contingencies for having her case dismissed. But I don't think that's what the law requires. Well, Your Honor, just quickly, there was no evidence and no facts pled that either Detective Cotton, Jim, or Nicholson were part of a group high-fiving or were part of any of those allegations. But what is important at the motion to dismiss stage was that the district court reviewed the facts in the complaint that affirmatively stated a district attorney and a district judge considered evidence in a two-day preliminary hearing and were not relying solely on an affidavit or statements in an affidavit to render a decision that probable cause existed. And that negates a claim for malicious prosecution. Let me interrupt because the way you just phrased it, that negates a claim, makes it look like causation is an affirmative defense. And if it were affirmative defense, then the government would have, probably wouldn't be able to prevail at the motion to dismiss stage. But what we really have here is that causation is an element of the claim. And the complaint alleges both that the district attorney prosecuted this and the district court found probable cause. So given that, I think the question is, does the complaint plausibly allege facts that would undermine the breaking causation caused by the district attorney prosecuting or the district court finding probable cause? And focus on that if you would. It's not that you're defeating the claim by the breaking causation. It's that the plaintiff has to plead causation and it's got to be a plausible claim. And that burden of being a plausible claim, I think is heightened by the fact that there were important intervening actors, the district attorney and the judge. So from that perspective, would you answer Judge Garcia's question? Is there enough to make a plausible claim here? And your honor, I appreciate the assist on that because I sometimes, because we've got two different... I was going to raise that even before you spoke. I wasn't trying to assist you. I'm trying to clarify this in my own mind. And to clarify that, no, no. I think it's a wonderful clarification, but the thing I would want to underscore is this is your opportunity to help us if there are any averments that undermine causation to grapple with them. So tell us, are there any and tell us what your best understanding of why they don't allow her to go forward? Yes, your honor. So the plaintiff is required to meet the elements of the malicious prosecution claim. And as Taylor versus Meacham is instructive and was relied on by the district court, when there has been a break in the chain, when there is no causal connection between the prosecution and the actions of the officer, there can be no going forward. So you phrase that, this is what's confusing me. You phrase that as you would if this were an affirmative defense, that there was a break in the causation. Am I wrong? Is it an affirmative? If it's an affirmative defense, I think you've got some problems. It's not, your honor. It is a burden. It is a pleading burden. There have to be facts alleged in the complaint that would show that, keep that chain together. The plaintiff is required to prove for the malicious prosecution claim that the prosecution would move forward without probable cause. And here, the allegations in the complaint affirmatively state probable cause existed to move forward as found by the district attorney and district court. And are there any allegations that undercut in the complaint, undercut or undermine improving causation in establishing the causal link? Are there any allegations that undercut the fact that the judge in a two-day hearing determined that probable cause existed? No, your honor, because the pleadings do not have any allegations or the First Amendment complaint has no allegations that the officers offered false testimony at the preliminary hearing, that the officers pressured the district judge or district attorney into bringing the claims. They didn't perjure themselves. Well, it's not just making a false statement. It's failing to inform the DA or the court about relevant information that might undermine the charge. What sort of allegations of that are there in the complaint? The allegations in the complaint were a list of things that, well, gosh, these things should have been included in the affidavit. There's no allegation that these weren't included in the investigative file, but that should have been included in the affidavit. Is there any allegation that they weren't elicited or that they were hidden in some way at the preliminary hearing? No, your honor. In fact, the First Amendment complaint contains no allegation that, for example, the same analysis was made before Detective Cottingham's affidavit and then he suppressed the results. The evidence is that the same exam was not allowed to be released to the police department and that was not available. What the affidavit did and what Detective Cottingham did in his affidavit was noted there was a sane exam. That way, if the results needed to be gathered, the district court or the district attorney could look at that. The First Amendment complaint also didn't allege that Detective Cottingham knew of but suppressed evidence showing that Mr. Thompson wanted to have a sexual relationship with the plaintiff. The affidavit contained information that was noted that allowed the district attorney and district court to look further into that at the charging stage and at the preliminary hearing. In addition, the affidavit also specifically provides the information that was referenced by opposing counsel that Detective Cottingham lied to Ms. Horakofsky. Detective Cottingham set forth his beliefs. He clearly said these are my affiant beliefs. These are my beliefs based on the investigation I conducted. He did not say this is evidence of motive. The affidavit included information for the district attorney and district judge to consider. They did and causation was not properly pled in the First Amendment complaint which warranted a dismissal and that decision should be affirmed by this court because the chain of causation was not pled and it was broken as stated in the complaint. Let me shift to the summary judgment area for a quick second. As it relates to that, there were some cases, at least as I saw them, that the plaintiff put forward trying to compare in the equal protection context what went on here to cases involving domestic violence and how they were treated or not pursued. Is that a valid comparison in this context, one, and then I have a similar question to follow up on that. Your Honor, I would submit that no, they are not similarly situated and the cases relied on are persuasive. First of all, the plaintiff and Mr. Thompson are not similarly situated for an equal protection analysis. Mr. Thompson was not the victim of the crime of false reporting. Law enforcement was the victim of the crime of false reporting. This idea that they were victims was for the first time raised by the plaintiff in her reply brief, but they are absolutely not victims. Mr. Thompson never reported a crime like Ms. Horakofsky did, and Mr. Thompson was not the victim of interference with law enforcement by falsely reporting a crime. To the second point, whether the cases are valid or not, the Doe case specifically, in that case, there wasn't a denial of police protection. In that case, no investigation was even done. First of all, Doe came years after the conduct in this case, and it's from a District of Oregon decision, which is not clearly established law, but it also does not stand for any proposition that Mr. Thompson and Ms. Horakofsky are similarly situated, one being the victim and one being the assailant. There was no similarly situated comparator that was set forth by the plaintiff that would meet the analysis for an equal protection claim. Your Honor, did you have a follow-up question? I looked at it, and I think that your answer sort of encompassed what I was getting at with my follow-up question, so I'm fine. Thank you for asking. I see that I'm out of time, so I'm happy to answer any questions, but the defendants would request that this court affirm the District Court's decision on all three aspects of the appeal. Anything else from my colleagues before rebuttal? I'm permitted to, Judge Charles. No, thank you. Okay. Thank you, counsel. Ms. Pilot, we'll give you a minute and a half, please, of rebuttal time if you want it. You don't have to have it. Yes, I would like it, Your Honor. Thank you. We do repeatedly allege intentional false statements. We allege falsifications, fraudulent statements. The words that were used over and over again were intentional, deliberate, and fraudulent. We're following up on... Go ahead, Judge Hart. I think we're going to use the same thing. Well, I was going to channel you. Go ahead and do it yourself. Well, those falsifications, allegations of that was with respect to the affidavit. Is that correct? Correct. Yeah. And the intro section, I guess you would call it before I did ABCDEF to paragraph 108 and 107 referred to this. In fact, the heading on paragraph 107 puts it in bold. The affidavit reflects bias, reckless investigation full of intentional falsehoods, omissions, and targeting of the victim. And are there any similar allegations undermining the integrity of the preliminary hearing? Your Honor, if I had it to do over again, I would include more of the district court's finding, but she said things that were flat wrong. She referred to the text messages, emails. She talked about the italics and quote marks. Those weren't in there. She confused the standard for a false statement. Everything about it was wrong. But I want to point out, Taylor v. Meacham is a summary judgment case. These are summary judgment issues. Okay. I think that's a nice point to punctuate, unless there are any further questions from the panel. You're over time. All right. That is our only case this morning. Case is submitted. Thank you, counsel, for your fine arguments.